# AFFIDAVIT OF SPECIAL AGENT MARK E. ELLIS IN SUPPORT OF AN APPLICATION FOR CRIMINAL COMPLAINT

I, MARK E. ELLIS, state:

## INTRODUCTION

1. I have been a Special Agent with the Treasury Inspector General for Tax Administration (TIGTA) since April 2003. I am presently assigned to the North East Field Division, Boston, Massachusetts. I obtained my Bachelors of Science in Criminal Justice Administration from Westfield State College. I previously worked for the Internal Revenue Service as a Revenue Officer for approximately 12 years. I have completed the 12-week Criminal Investigator Training Program the three week Special Agent Basic Training, Inspector General Academy, and Advanced Special Agent Training, all of which were held at the Federal Law Enforcement Training Center in Glynco, Georgia.

2. I am currently assigned as a part-time Task Force Officer with the United States Postal Inspector Financial Crimes Task Force and have experience in working cases that involve violations of Title 18, United States Code, including wire fraud, mail fraud, and identity theft. I have received extensive training in conducting financial investigations that involve analyzing the books and records of individuals and/or businesses, such as bank accounts, and other records evidencing violations of the Internal Revenue Code and the United States Code. I have also received extensive training and have participated in numerous search and seizure warrants relating to various criminal violations. As a Special Agent, my responsibilities include investigations of criminal violations of Titles 18, 26, and 31 of the United States Code.

3. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

1

4. I submit this affidavit in support of an application for a criminal complaint charging JENNIFER BETH TRUE with wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (c).

5. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint, and does not set forth all of my knowledge about this matter.

## BACKGROUND

6. Special Agents from TIGTA and the Internal Revenue Service Criminal Investigation, United States Department of Treasury (IRS-CI) are conducting a criminal investigation of JENNIFER BETH TRUE, an Internal Revenue Service (IRS) Lead Contact Representative who works out of the Andover, Massachusetts IRS Service Center.

7. TRUE has been employed by the IRS for over 22 years. In her position as Lead Contact Representative, she assists team members in responding to difficult and complex taxpayer inquiries. Throughout her employment, TRUE has been trained in Tax Law, Ethics, Information Protection and Disclosure, Privacy, Identity Theft, and Identity Protection. This included training on the IRS rule, codified at 5 C.F.R. § 3101.106(b)(5), that specifically prohibits IRS employees from "Engaging in the preparation of tax returns for compensation, gift, or favor."

8. Throughout her IRS employment, including in October 2016, December 2017 and December 2018, TRUE completed an Identity Theft Awareness Briefing designed for new IRS employees, or those newly appointed to positions, that have direct contact with taxpayers -

especially those who are or may become victims of identity theft. TRUE also completed an Identity Protection Overview course, which shares high-level information and contains updates to IRS identity theft programs and initiatives, on several occasions during her IRS employment, including in March and October 2014, December 2017 and December 2018.

## PROBABLE CAUSE

9. In or around April 2017, IRS Tax Compliance Officer Keith Carter contacted TIGTA about his assigned case regarding an IRS Form 1040, U.S. Individual Income Tax Return, for the tax year 2015 filed by Taxpayer 1 and Taxpayer 2, whose identities are known to me. During an IRS audit, Taxpayer 1 reported to Carter that an individual named JENNIFER TRUE, who identified herself as an IRS employee, prepared their tax return. Taxpayer 1 advised Carter that she paid TRUE via a personal check.

10. Taxpayer 1 later confirmed to investigators that her husband, Taxpayer 2, works for a company located in Lawrence, Massachusetts. Taxpayer 1 reported that Taxpayer 2 told her about JENNIFER TRUE, who prepared tax returns for Taxpayer 2's co-workers. Taxpayer 2 reported to Taxpayer 1 that those co-workers received large tax refunds. In March 2016, Taxpayer 1 and Taxpayer 2 met with TRUE and she prepared their federal and state tax returns for 2015. Taxpayer 1 told investigators that she and Taxpayer 2 provided TRUE with their relevant tax documents, and that TRUE confirmed when they met that she worked for the IRS. Taxpayer 1 paid TRUE $100 via personal check dated March 15, 2016, a copy of which she provided to investigators. The back of the check reflected the signature of "Jennifer True," and revealed that the check was deposited on March 21, 2016 into an account with Merrimack Valley Federal Credit Union. According to Taxpayer 1, in exchange for the $100 fee, TRUE prepared

and electronically filed an IRS Form 1040, U.S. Individual Income Tax Return, for tax year 2015 for Taxpayer 1 and Taxpayer 2, reporting a refund in the amount of $8,106.

11.     A review of records produced by tax software provider TaxAct revealed that the IRS Form 1040 for 2015 for Taxpayers 1 and 2 was electronically filed on or about March 15, 2016.  In or around January 2020, investigators confirmed with TaxAct that its servers are located in Virginia.

12.     On or about March 15, 2016, Taxpayer 1 received an email from TRUE, using email address jbtrue73075@gmail.com, which attached the Form 1040 for 2015 for Taxpayer 2 and Taxpayer 1.  The email read, "Cheryl Sorry for the inconvenience attached is your Form 1040 Jennifer."

13.     In December 2016, Taxpayer 1 and Taxpayer 2 were audited by the IRS.  When she reviewed her Itemized Deductions (*i.e.,* Schedule A) prepared by TRUE for her Form 1040, Taxpayer 1 noticed that TRUE entered deductions that Taxpayer 1 never had, and never told TRUE to enter.  Taxpayer 1 sent an e-mail to TRUE at jbtrue73075@gmail.com on or about December 15, 2016, with the subject line "just got audited by the IRS for the tax return you prepared for us for 2015."  Taxpayer 1 wrote:

> Reviewing our IRS statement that you prepared I realized that 75% of what you documented is untrue/mistakes, etc....... So I am meeting with the IRS about this issue so you will probably be contacted. If there's anything you can do before I meet with them I would highly advise you to contact myself or my husband William Taxpayer 2. This is an extremely important matter involving quite a lot of money and legal implications. I hope we can work this out between us. Bill's number is 978-569-0004 or my number is 603-520-9310. Please call us ASAP! Thank you & I hope to hear from you very soon. Cheryl Taxpayer 1

TRUE never responded to Taxpayer 1's email. Taxpayer 1 is currently under IRS audit and owes the IRS approximately $1,658.00 for Form 1040, tax year 2015.

14. To date, investigators have identified at least 591 returns processed in calendar years 2012 through 2017 that were likely prepared by TRUE. To identify these returns, the TIGTA Strategic Data Services Division (SDS) first identified tax returns that were likely prepared by TRUE by locating filed returns associated with TRUE's email addresses. SDS then used the Device IDs and Internet Protocol (IP) addresses associated with those returns to locate additional returns associated with those Device IDs and IP addresses, but which had not been located using TRUE's email addresses. The Device ID field is a unique identifier IRS collects for electronically filed returns, and which tax software programs access and transmit to the IRS with the electronic return.

15. During the course of this investigation, at least 40 witness interviews were completed. Witnesses advised that they paid TRUE to prepare their tax returns, and that they paid TRUE between $40 and $100 per return that she prepared.

16. During the relevant time period, TRUE banked at Merrimac Valley Federal Credit Union. Bank records obtained via Grand Jury subpoena revealed that checks from a number of individuals were deposited into TRUE's account, with the memo lines of the checks indicating that the payments were for tax preparation, *e.g.*, "taxes," "tax," "tax refund," "tax prep fee.".

17. The witness interviews revealed that between at least as early as February 2012 and at least as late as April 15, 2018, TRUE prepared at least 70 IRS Forms 1040, U.S. Individual Income Tax Returns that included materially false items such as false IRA deductions, false medical expenses, false and inflated unreimbursed business expenses, and/or false tax

5

preparation fees. Some returns also included false child and dependent care credits. Additionally, TRUE amended one taxpayer's income tax returns for three prior years, in order to claim false deductions. All witnesses advised that they had not provided TRUE with the false information and did not know that TRUE was including such false information on the returns she prepared. Some witnesses reported that they trusted TRUE to know the tax laws because they knew she worked for the IRS, and others reported that TRUE assured them that she knew what she was doing because she was an IRS employee.

18. TRUE prepared the vast majority of the tax returns at issue on her personal computer using TaxAct software. Witnesses reported that TRUE entered the information personally in the software. According to witnesses, TRUE typically prepared the returns at her residence in Lawrence, Massachusetts but occasionally traveled to a taxpayer's residence to prepare the return.

19. Included within the 591 processed tax returns described above were TRUE's own personal tax returns for tax years 2014, 2015 and 2016, which were identified as being potentially fraudulent due to excessive deductions or dependent care credits.

20. In particular, TRUE used the TaxAct software to electronically file an IRS Form 1040, U.S. Individual Income Tax Return for the year 2014, on or about February 15, 2015. On Line 6c of the return, TRUE claimed seven dependents, including Taxpayer 3, whose identity is known to me. TRUE included Taxpayer 3's full name and Social Security Number on the Form 1040. TRUE's tax obligation for 2014 was reduced because she claimed Taxpayer 3 as a dependent.

21. Taxpayer 3 told investigators that TRUE prepared several tax returns for

Taxpayer 3 and her husband. Taxpayer 3 met TRUE through Taxpayer 3's brother, who had previously dated TRUE. Taxpayer 3 told investigators that she has never lived with TRUE, and that TRUE never provided financial support of any kind to Taxpayer 3. In fact, Taxpayer 3 and her husband paid TRUE to prepare their tax returns. Taxpayer 3 never gave TRUE permission to use her name and Social Security Number for any purpose other than to file the tax returns on behalf of Taxpayer 3 and her husband.

## CONCLUSION

22. For all of the reasons stated above, there is probable cause to believe that JENNIFER BETH TRUE, between in or about February 2012 and April 2018, in the District of Massachusetts and elsewhere, committed wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (c).

Respectfully submitted,

_____
MARK E. ELLIS
Special Agent
Treasury Inspector General for Tax Administration

Subscribed and sworn to before me
on _____**Jan 13, 2020**_____
       Date

_____
JUDITH G. DEIN
United States Magistrate Judge